*In re* CUSTODY OF ELIZABETH D. HORNE, a Minor (Sharon Horne *et al.*, Petitioners-Separate Appellants, v. William C. Horne, Respondent-Appellant (Elizabeth D. Horne, a Minor, *et al.*, Respondents-Appellees)).

Fourth District   No. 4—93—0715

Opinion filed March 11, 1994.

John W. Foltz, of Glasgow Law Office, and Keith Hays, both of Monticello, for appellants.

Betsy Pendelton Wong, of Phebus, Winkelmann, Wong, Bramfeld & Zopf, of Urbana, for appellees.

Leonard R. Rumery, Assistant State's Attorney, of Monticello, guardian *ad litem*.

JUSTICE LUND delivered the opinion of the court:

This is an appeal, by petitioners Sharon Horne and Harry Horne and respondent William Horne, of an order of the circuit court of Piatt County declining to take jurisdiction of the question of custody of Elizabeth Danielle Horne. The July 12, 1993, determination also recognized jurisdiction of the 264th District Court of Bell County, Texas, over the issue of custody. The Texas case was filed June 10, 1993, and temporary custody was given to Mary Oliver, maternal grandmother of Elizabeth, on June 23, 1993. The initial pleadings in Piatt County were filed on June 29, 1993.

The question is jurisdiction and application of the Uniform Child Custody Jurisdiction Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 2101

*et seq.* (now 750 ILCS 35/1 *et seq.* (West 1992))) adopted by both Illinois and Texas.

On February 22, 1993, William Horne, while serving with the military in the State of Texas, shot his wife Nanette. She was pregnant and the child, Elizabeth Danielle, was delivered by caesarean section on February 23, 1993. Nanette died the same day. Both William and Nanette had been living in Texas. Elizabeth remained in a Texas hospital until March 10, 1993, at which time she was taken by William's sister to Piatt County, Illinois, and delivered to William's parents, Sharon and Harry Horne. In June 1993, Sharon and Harry Horne (with Elizabeth) went to Texas for military court criminal proceedings, which resulted in William's conviction for unpremeditated murder. William was sentenced to eight years' imprisonment at Leavenworth, Kansas.

As a result of the Texas custody hearing, that court ordered Elizabeth's transfer be made by the Hornes to Mary Oliver on July 5, 1993. The Piatt County circuit court, in refusing Illinois jurisdiction, also enforced the transfer order of the Texas court.

We recognize the tragic fact situation and also the purposes of the Act as indicated by section 2 thereof (Ill. Rev. Stat. 1991, ch. 40, par. 2102 (now 750 ILCS 35/2 (West 1992))). Jurisdictional competition only creates expensive litigation and, often, damage to innocent children. We find the Act applies to the present case.

Jurisdiction under the Act is outlined in section 4 of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 2104 (now 750 ILCS 35/4 (West 1992))), but "home state" is defined in section 3.04 of the Act as follows:

> " 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned, however, periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." Ill. Rev. Stat. 1991, ch. 40, par. 2103.04 (now 750 ILCS 35/3.04 (West 1992)).

At the time of the Piatt County July 12, 1993, hearing, the child was less than five months old. She was born in Texas and hospitalized there for several days; her mother died there and her father was incarcerated there until his transfer to Leavenworth. Her maternal grandmother and paternal grandparents lived out of State. It appears no court orders were sought or entered before the March removal of the child to Illinois. After the father's conviction, a custodial action was filed in Texas and the paternal grandparents were represented. The Texas court heard evidence, entered a temporary order, and

ordered further investigation as to the homes of both the maternal grandmother and the paternal grandparents.

The unsatisfactory Texas decision most likely led to the State of Illinois proceedings. Petitioners here contend that with their home being in Piatt County and the child being in their home, jurisdiction belongs in this State.

We find the facts in this case require the application of section 7 of the Act, which provides:

> "Simultaneous Proceedings in Other States. (a) A court of this State shall not exercise its jurisdiction under this Act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Act, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.
>
> (b) Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under Section 10 and shall consult the child custody registry established under Section 17 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.
>
> (c) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 20 through 23 of this Act. If a court of this State has made a custody judgment before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the most appropriate forum." Ill. Rev. Stat. 1991, ch. 40, par. 2107 (now 750 ILCS 35/7 (West 1992)).

The trial judge in Piatt County recognized the importance of contacting the Texas court. That contact consisted of two phone calls. The Illinois judge was informed by the Texas judge that home studies had been ordered and, in due time, a final hearing would be held. The Illinois judge was assured by the Texas judge that the interests of all parties would be fairly considered. The Illinois judge determined jurisdiction should remain with the Texas court.

We note that interstate communication by the trial judges is also authorized by section 8(d) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 2108(d) (now 750 ILCS 35/8(d) (West 1992))), which provides for inconvenient forum considerations. We suggest the facts in this case are illustrative of the problems that trigger the use of the inconvenient forum provisions. Forum determination is a discretionary decision best left to the trial courts.

We conclude the Illinois judge's decision was not an abuse of discretion. We compliment him for using the facilities of the Act.

Affirmed.

KNECHT and GREEN, JJ., concur.